**E-FILED on** 9/12/05

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DARNELL FARMEARL,<br><br>  Plaintiff,<br><br>  v.<br><br>STOROPACK, INC., and DOES 1-20, inclusive,<br><br>  Defendants. | No. C-04-02644 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>**[Re Docket No. 19, 47, 52]** |

Darnell Farmearl ("Farmearl") has sued Storopack, Inc. ("Storopack") for (1) harassment, (2) employment discrimination, (3) retaliatory discharge, (4) wrongful termination of employment in violation of public policy, (5) breach of contract, and (6) intentional infliction of emotional distress. Storopack seeks partial summary judgment on Farmearl's second, third, fourth, fifth, and sixth causes of action and on his prayer for punitive damages. Farmearl opposes the motion. The court has read the moving and responding papers and considered the arguments of counsel. For the reasons set forth below, the court grants in part and denies in part Storopack's motion.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
C-04-02644 RMW
DOH/KMF

# I. BACKGROUND

Storopack makes and distributes paper, starch, and expanded polystyrene packing materials.[1] Storopack's manufacturing process involves machines that are called "extruders" and "expanders." Farmearl, who is African-American, began working at Storopack's San Jose facility as a machine operator in 1998. Farmearl's supervisor was Jesse Valderrama ("Valderrama"). Farmearl asserts that Storopack promoted him to foreman in June of 2000. Farmearl Depo. at 97:1-8.[2] On February 19, 2001 Storopack issued Farmearl's annual review. Biscardi Decl. Supp. Mot. Summ. J. ("Biscardi Decl.") Ex. A. The review rated Farmearl's performance "outstanding" overall, but noted that he "has some difficulty working with others." *Id*. Valderrama testified that he issued a verbal warning to Farmearl because Farmearl and another employee "just weren't getting along" and "would threaten each other." Valderrama Depo. at 46:21-47:22.

In March 2001 Storopack acquired a rival company, American Excelsior, and its equipment. Whisnant Decl. Supp. Mot. Summ. J. ("Whisnant Decl.") ¶ 6. American Excelsior's equipment was more complex than Storopack's equipment. *Id*. at ¶ 7.[3] Ernie Fulgado ("Fulgado"), a former American Excelsior

---

[1] Both parties submitted numerous objections to evidence upon which the opposing party relies. For example, Storopack objects to Farmearl's exhibits because he filed them by regular mail and thus prevented Storopack's counsel from obtaining them for three days after the deadline. Granting Storopack's sweeping objection would preclude Farmearl from mounting any factual arguments in opposition to Storopack's motion for partial summary judgment; the court thus declines to do so. Likewise, Farmearl objects to nearly every line of Storopack's motion for partial summary judgment. The vast majority of Farmearl's "objections" claim that Storopack mischaracterizes facts. Because the court draws its factual analysis from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," and not attorney argument such as Storopack's brief, Farmearl's objections are unnecessary. *See* Fed. R. Civ. P. 56(c). The court will consider specific evidentiary objections as necessary throughout this order.

[2] Storopack objects that Farmearl's assertion that he became foreman is not supported by any other evidence other than his own testimony. In fact, another former Storopack employee substantiated this claim. *See* Declaration of Lawrence Herrera ¶ 4. In any event, because Farmearl testified at his deposition under oath, and because the court must view the evidence in the light most favorable to non-moving party at the summary judgment stage, Storopack's argument lacks merit. *See, e.g., Mihok v. Magnetek, Inc.*, 2002 WL 1162843, *4 n.6 (C.D. Cal. 2002) ("[p]laintiff's deposition testimony is admissible for purposes of this summary judgment motion, because Plaintiff was under oath").

[3] Farmearl objects that Whisnant's statement that the American Excelsior extruder was "more complex" than the Storopack extruder lacks foundation. The court disagrees. Whisnant explains that the American Excelsior equipment "created a starch-based loose fill," and that "[t]o operate the extruder required knowledge of how to mix the ingredients forming the starch product." Whisnant Decl. ¶ 7. Thus, Whisnant's own declaration reveals that he had personal knowledge of how the Storopack extruder

employee, also joined Storopack. *Id*. Fulgado is white. Farmearl Decl. Supp. Opp. Mot. Summ. J. ("Farmearl Decl.") ¶ 4. According to Lester Whisnant ("Whisnant"), Storopack's Regional General Manager, Storopack paid Fulgado more than other machine operators because he alone understood how to operate American Excelsior's machines. Whisnant Decl. ¶ 6.

In July 2001 Storopack created a new position called Production/Technical Manager. The Production/Technical Manager's responsibilities included overseeing production and supervising machine operators. *Id*. at ¶ 2. Farmearl expressed an interest in getting the job. Valderrama Depo. at 59:4-12. However, Whisnant hired Troy Biscardi ("Biscardi"), who is white. Whisnant Decl. ¶ 3. Whisnant claims that he hired Biscardi because Biscardi (1) had previously served as American Excelsior's Plan Manager, (2) had experience operating American Excelsior's equipment, and (3) was generally professional and positive. *Id*.[4] Whisnant asserts that he did not consider hiring Farmearl "or any other line employee from Storopack . . . because they did not have the requisite experience overseeing major production operations and supervising a team of employees." *Id*. at ¶ 4. Whisnant also noted that the Production/Technical Manager position "required effective and appropriate communication" and that Farmearl's "negative attitude" would have hindered his performance. *Id*. Storopack sent Biscardi to Southern California to learn how to operate its equipment. Valderrama Depo. at 58:6-21. Farmearl asserts that he trained Biscardi to operate Storopack's expander. Farmearl Decl. ¶ 2.[5]

On October 8, 2001 Biscardi issued a Corrective Action Notice to Farmearl. Biscardi Decl. Ex. B. The Corrective Action Notice states that Farmeal exhibited a "[n]egative attitude" and is "not participating or communicating with other employees." *Id*. Biscardi asserts that Farmearl engaged in "inappropriate displays of anger and insubordination" around this time. Biscardi Decl. ¶ 5. Biscardi claims

---

compared to the American Excelsior extruder. *See* Fed. R. Evid. 601 (witness may establish foundation through own testimony).

[4] Farmearl objects that Whisnant's assessment of Biscardi "lacks foundation." The court disagrees. Whisnant claims that he formed these opinions "[w]hen [he] interviewed . . . Biscardi." Whisnant Decl. ¶ 3. Of course, Whisnant has firsthand knowledge of his own opinions.

[5] According to Valderrama, Farmearl sometimes trained new machine operators before Biscardi arrived. Valderrama Depo. at 55:25-56:13. Valderrama opined that Farmearl did "[a] fair job" with this task. *Id*. at 56:13-16.

that he told Farmearl that such conduct could be grounds for Storopack to terminate Farmearl's employment. *Id*.

At some point after this incident, Farmearl spoke to Evelyn Burke ("Burke"), Storopack's Director of Human Resources. Burke Depo. at 132:16-133:1. In her deposition, Burke testified that Farmearl voiced concern that Storopack (1) paid him less than Fulgado, (2) hired Biscardi for the Production/Technical Manager position, and (3) "discriminated against" Farmearl. *Id*. Farmearl recalls that this meeting took place at the San Jose facility and lasted "almost an hour." Farmearl Decl. ¶ 5. According to Farmearl, Burke explained that "regardless of what [he] said, she would have to side with . . . Whisnant, because he was the manager." *Id*.

On January 24, 2002 Farmearl defaced a map of Storopack's storage bins that hung in the machine operator's work area. Biscardi Decl. ¶ 7. Farmearl wrote on the map: "Learn the paper work to see what's going on. That's right you don't want to come to the mac[hine] on my shift." Biscardi Decl. Ex. C.[6] Farmearl also wrote on a training schedule.[7] The top of the document contained the title, "Training Schedule," to which Farmearl added the words "by RACIST MANAGEMENT." Biscardi Decl. Ex. D. Another entry stated that Farmearl would train Fulgado to operate the expanders. Farmearl added the word "NOT." *Id*. After another reference to Fulgado, Farmearl wrote "$17 per HR SLAVERY IS OVER AS OF 1865." *Id*. By Biscardi's signature, Farmearl wrote the word "RACIST." *Id*. Finally, Farmearl drew an arrow at the bottom margin and wrote "MORE WORK FOR LESS MONEY BULLSHIT." *Id*.

Farmearl's conduct prompted Biscardi to give Farmearl another Corrective Action Notice. Biscardi Decl. Ex. E. The Corrective Action Notice states that "[a]nother incident of unacceptable

---

[6] Farmearl objects that a copy of the map with his handwriting on it was not produced during discovery. Storopack denies this claim. The version of the map that Storopack presented to the court appears to have been introduced as an exhibit during Farmearl's deposition but otherwise lacks a Bates stamp. In any event, Biscardi's declaration recites what Farmearl wrote on the map. Biscardi Decl. ¶ 7. Moreover, Farmearl does not deny that he wrote what Storopack claims he wrote. Farmearl's objection is thus moot.

[7] Farmearl claims that he defaced "his own copy" of the training schedule. Opp. Mot. Summ. J. at 2-11-12. However, Farmearl provides no support for this contention.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
C-04-02644 RMW
DOH/KMF                                                   4

behavior will result in further discipline up to and including discharge." *Id*. Storopack also suspended Farmearl without pay for three days. *Id*.

On March 5, 2002 Storopack presented Farmearl with his annual performance review. Biscardi Decl. Ex. F. Biscardi conducted the review. *Id*. Biscardi rated Farmearl's overall job performance as "good" but noted that Farmearl still has difficulty working with others and "seldom shows interest or makes suggests to work[-]related problems." *Id*. Biscardi elaborated:

> [Farmearl] has performed good accurate work, with minimal errors. However, [he] needs to improve his people skills and not concern himself with other employee[s]' work duties. [He] has started to show an improvement in some of these area[s] since his suspension on January 28, 2002.

*Id*.

In July 2002 Storopack promoted Fulgado to the position of Service Technician. Biscardi Decl. ¶ 2. This job entailed performing repairs for customers. *Id*. Biscardi had been performing such tasks on an interim basis since Storopack had hired him. Whisnant Decl. ¶ 5. According to Whisnant, Storopack did not select Farmearl for the position because of his temperament. *Id*. at ¶ 7.

In August 2002 Farmearl discovered that a co-worker had left dead and dying mice on his work bench. Farmearl Depo. at 236:1-18. Farmearl asserts that the incident upset him. *Id*. at 276:4-22. Farmearl also asserts that, while he worked at Storopack, someone also broke into his locker, slashed his tires, and broke a key off in his locker.

On September 9, 2002 Biscardi again issued Farmearl a performance review. Biscardi Decl. Ex. H. The review again noted that Farmearl "has some difficulty working with others." *Id*. Biscardi gave Farmearl an overall performance score of 67. A score of 65 would have placed Farmearl in the "needs improvement" category. *Id*.

On October 22, 2002 Farmearl alleges that his former supervisor, Frank Andrews ("Andrews") asked him "how things are going." Opp. Mot. Summ. J. at 3:13-14. Farmearl asserts that he "informed

Andrews that he had an appointment with the EEOC (actually the DFEH) regarding the work environment at Storopack." *Id*. at 3:14-16.[8]

On October 25, 2002 Biscardi issued yet another Corrective Action Notice to Farmearl. Biscardi Decl. Ex. 12. The Corrective Action Notice states that Farmearl complained to Biscardi about Storopack's decision to reassign Farmearl to an extruder machine rather than let him train other employees. *See id*. According to Biscardi, Farmearl said, "You are all going to be sorry when this is over." Biscardi Decl. ¶ 12. The Corrective Action Notice explained that Storopack would not tolerate further such behavior:

> [Farmearl] continually makes other employees uneasy with his on-going vocal complaints about his dissatisfaction with his wages, job[,] and the company in general. [He] has been warned on several occasions about his attitude and how it disrupts the environment. [¶]. Management is not going to tolerate [Farmearl] exhibiting an attitude that makes other employees uncomfortable, or making statements that are of a threatening nature to his peers, sales personnel, or members of management. [¶]. This is a final warning. Should [Farmearl] direct another statement that is threatening to his peers or management members, continue to present a poor and uncooperative attitude, or exhibit insubordination to his supervisor or manager, his employment will be terminated.

*Id*. Farmearl asserts that Biscardi filed the Corrective Action Notice in retaliation for Farmearl's comment to Andrews that Farmearl intended to file a claim with the DFEH. Farmearl Depo. at 259:9-12.

According to Farmearl, he and Burke spoke in November 2002. Farmearl asserts that he complained, *inter alia*, about Biscardi (1) yelling at him, (2) forcing him to get information from co-workers, (3) taking away his overtime, (4) demoting him, (5) cutting his wages, and (6) considering him "not social enough," and (7) not remedying the dead mice incident.

---

[8] Storopack objects to Farmeal's support for this contention, which comes from his deposition. Farmearl testified that Andrews "is the only guy that I told I was going to go down to the EEOC. So, to [Biscardi] he said—he told me that was a threatening remark." Farmearl Depo. at 259:8-12. Storopack claims that Farmearl's recounting of what he said to Andrews is hearsay. The court disagrees. Hearsay is an out-of-court statement offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c). By claiming that his comments alerted Storopack to the fact that he intended to file a claim with the DFEH, Farmearl offers his out-of-court statement not for the truth of the matter, but for the non-hearsay purpose of proving Andrews' awareness of the impending DFEH charges. However, the court sustains Storopack's objection to the extent that Farmearl speculates that Andrews then informed Biscardi about Farmearl's intent. Farmearl cites nothing to suggests that he has firsthand knowledge of what Andrews told Biscardi.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
C-04-02644 RMW
DOH/KMF                                                              6

1    On November 19, 2002 Farmearl filed a DFEH complaint. Sommer Decl. Supp. Mot. Summ. J.
2 ("Sommer Decl.") Ex. F. The DFEH eventually determined that there was no evidence that Storopack
3 discriminated against Farmearl. *Id*.[9]

4    Farmearl asserts that, on either January 9th or 10th, 2003 he informed Burke that another
5 employee, Roberto Martinez ("Martinez") was drinking at work. Farmearl Decl. ¶ 6. According to
6 Farmearl, Burke "seemed to get upset or angry, and she said . . . that Storopack [w]as not happy with me
7 filing my DFEH charges of discrimination." *Id*.

8    On January 10, 2003 Storopack issued a final Corrective Action Notice. Biscardi Decl. Ex. I.
9 According to Storopack, Farmearl circled four days on a wall calendar and wrote that Martinez had been
10 "drinking on the job" and not subjected to a "PISS TEST." *Id*. Biscardi suspended Farmearl "without pay
11 and until further notice." *Id*.

12    Storopack terminated Farmearl's employment on January 15, 2003. Biscardi Decl. Ex. J. Burke
13 made the decision to fire Farmearl after reviewing his personnel file. Burke Decl. Supp. Mot. Summ. J.
14 ("Burke Decl.") ¶ 4. Burke wrote to Farmearl and informed him that Storopack had fired him because
15 previous warnings had failed to alter his "hostile attitude, threats[,] and abusive language." *Id*.

## II. ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is proper when there is no genuine issues as to any material fact and the movant is entitled judgment as a matter of law. *See* Fed. R. Civ. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). This court must regard as true the non-moving party's evidence, if supported by affidavits or other evidentiary material. *Id*. at 324. Where the moving party does not bear the burden of proof on the issue at trial, it may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If

---

[9] Farmearl objects that "'no cause' determinations by a government agency are generally not admissible." Farmearl does not assert a specific evidentiary ground for excluding the DFEH's determination, but cites *Michail v. Fluor Mining & Metals, Inc.*, 180 Cal. App. 3d 284 (1986). In *Michail*, a California appellate court upheld a trial court's exclusion of an EEOC determination on hearsay, relevance, and prejudice grounds. *See id*. at 287. Yet *Michail* also acknowledged that the Ninth Circuit holds "that EEOC determinations are per se admissible in both jury and nonjury trials." *Id*. at 286 n.4 (citing *Plummer v. Western Intern. Hotels Co., Inc.*, 656 F.2d 502, 505 (9th Cir.1981)). The court thus overrules Farmearl's objection for the purposes of this order.

the moving party shows an absence of evidence to support the non-moving party's case, the burden shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

### B. Discrimination Claims

Farmearl's second cause of action alleges that Storopack (1) failed to promote him, (2) paid him less, and (3) fired him because he is African American.[10] Farmearl's third cause of action claims that Storopack fired him because he filed a complaint with the DFEH. According to Farmearl, Storopack's conduct violated the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12940 *et seq*. The FEHA forbids employers from discriminating against employees because of their race or firing them for engaging in protected behavior:

> It shall be an unlawful employment practice . . . .
> \*\*\*
> (a) For an employer, because of the race . . . of any person, . . . to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.
> \*\*\*
> (h) For any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

Cal. Gov. Code § 12940(a), (h). To succeed on his FEHA claims, Farmearl must first establish a *prima facie* case of discrimination.[11] *See, e.g., Guz v. Bechtel Nat. Inc*., 24 Cal. 4th 317, 355 (2000). If Farmearl meets this burden, he creates a presumption of discrimination which Storopack can rebut by "articulating some legitimate, non-discriminatory reason" for its employment decisions. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If Storopack does so, Farmearl must present "specific, substantial evidence" that Storopack's reasons are pretextual. *Guz*, 24 Cal. 4th at 356.

---

[10] Although the latter allegation does not appear in the complaint, Farmearl argues that his "[t]ermination [w]as [r]ace[-b]ased" in his opposition to Storopack's motion for partial summary judgment. Opp. Mot. Summ. J. at 15:26-16:24.

[11] The court discusses the requirements for establishing a *prima facie* case on each of Farmearl's specific claims of discrimination below.

1. **Failure to Promote Based on Race**

Farmearl argues that Storopack failed to promote him (1) to the Production/Technical Manager position in 2001 and (2) to the Service Technician position in 2002 because of his race.

a. *Prima Facie* Case

In order to establish a *prima facie* case for discriminatory failure to promote in violation of the FEHA, a plaintiff must prove that (1) he was a member of a protected class, (2) he was qualified for the position, (3) he was not promoted, and (4) some other circumstance suggests discriminatory motive. *See Guz*, 24 Cal.4th at 355. This initial step in the burden-shifting analysis "is designed to eliminate at the outset the most patently meritless claims, as where the plaintiff is not a member of the protected class or was clearly unqualified, or where the job he sought was withdrawn and never filled." *Id*.

Storopack argues that Farmearl cannot prove that he was qualified for either the Production/Technical Manager or the Service Technician position. The court disagrees. The Production/Technical Manager position, for which Storopack hired Biscardi, required overseeing production and supervising machine operators. Whisnant Decl. ¶ 2. The Service Technician position, for which Storopack hired Fulgado, required performing repairs for customers. Biscardi Decl ¶ 2. Valderrama testified that Farmearl trained new machine operators before Biscardi arrived. Valderrama Depo. at 55:25-56:13. Farmearl also asserts that he had to train Biscardi on Storopack's expander. Farmearl Decl. ¶ 2.[12] Farmearl's proficiency with Storopack's equipment belies Storopack's claim that Farmearl was "clearly unqualified" for either the Production/Technical Manager job or Service Technician position. Because Farmearl's claims are not "patently meritless," he establishes a *prima face* case.

b. **Storopack's Reasons for Failing to Promote Farmearl**

Storopack claims that it did not promote Farmearl to the Production/Technical Manager position because (1) he did not know how to operate American Excelsior's equipment, (2) lacked management

---

[12] Storopack asserts that this paragraph of Farmearl's declaration "lacks foundation" under Federal Rule of Evidence 701 and "lack[s] . . . personal knowledge" under Federal Rule of Evidence 602. The court disagrees. Rule 701 permits witnesses to offer opinions that are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony . . . and (c) not based on scientific, technical, or other specialized knowledge . . . ." Storopack does not articulate how Farmearl's opinion that he needed to train Biscardi fails to fulfill these criteria. Rule 602 requires witnesses to testify from personal knowledge. Farmearl certainly has personal knowledge of whether he trained Biscardi.

experience, and (3) did not communicate effectively.  Whisnant Decl. ¶ 4.  Storopack also asserts that it did not promote Farmearl to the Service Technician position because of his clashes with Storopack management.  *Id*.  Storopack's race-neutral justifications for failing to promote Farmearl satisfy its burden.

### c.    Evidence that Storopack's Reasons are Pretextual

Farmearl fails to offer "specific, substantial evidence" that Storopack's claimed rationales for failing to promote him are pretextual.  Farmearl asserts that he was more qualified than Biscardi because he had to train Biscardi how to operate Storopack's equipment.  However, it is undisputed that Biscardi, unlike Farmearl, understood how to operate the equipment that Storopack acquired from American Excelsior.  Moreover, the Production/Technical Manager position required more than mere technical know-how.  According to Whisnant, Storopack did not consider *any* of its machine operators for the position because they all lacked management experience.  Whisnant Decl. ¶ 4.  Biscardi, on the other hand, had previously served as American Excelsior's Plan Manager.  *Id*.  In addition, even though the vast majority of Farmearl's disciplinary problems came after this hiring decision, Storopack had already noted that he had difficulty working with others in his performance reviews.  Storopack's claim that such problems would be especially troublesome in a supervisory role makes sense.  Finally, other than the mere fact that he is African-American and Biscardi is white, Farmearl offers no evidence whatsoever that race played a role in Storopack's promotion decisions.  Thus, the court grants summary judgment on Farmearl's failure to promote claim with respect to the Production/Technical Manager position.

Farmearl also fails to cast doubt on the truthfulness of Storopack's justification for denying him the Service Technician position.  Storopack gave the position to Fulgado in July 2002.  By this time, Farmearl had already received two Corrective Action notices.  Storopack had also suspended Farmeal without pay for writing on the map and training schedule.  These disruptive incidents reinforce Storopack's assertion that Farmearl's personality did not make him a good fit for a job that involved close client contact.  Whisnant Decl. ¶ 7.  The court grants summary judgment on Farmearl's failure to promote claim with respect to the Service Technician job.[13]

---

[13]    Similarly, Farmearl offers no evidence to refute Storopack's claim that it paid Fulgado more because he was the only Storopack employee who understood how to operate the American Excelsior equipment.  Whisnant Decl. ¶ 6.

### 2. Firing Based on Race

#### a. *Prima Facie* Case

To establish a *prima facie case* of racial discrimination, Farmearl must prove that he (1) is a racial minority, (2) suffered an adverse employment decision, and (3) the defendant treated similarly-situated non-minorities differently. *See Rodriguez v. Int'l Business Machines*, 960 F. Supp. 227, 230 (N.D. Cal. 1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Farmearl satisfies this burden. He is both a racial minority and suffered an adverse employment action. In addition, there is some evidence that Storopack singled out Farmearl for harsh treatment. For example, Farmearl describes an incident in 2001 when Valderrama sent him home but permitted Fulgado, who is white, to continue working. Farmearl Decl. ¶ 4. Similarly, according to Farmearl, in August or September 2001, Biscardi asked Farmearl to "punch out" during lunch, but permitted other employees to eat without "punching out." *Id*. at ¶ 7. Although Farmearl's evidence is hardly overwhelming, it is not "patently meritless" and thus sufficient to state a *prima facie* case of discrimination.

#### b. **Storopack's Reason for Firing Farmearl**

Storopack claims that it fired Farmearl for engaging in disruptive behavior. This is a legitimate, non-discriminatory reason for terminating Farmearl's employment.

#### c. **Evidence that Storopack's Reason is Pretextual**

Farmearl cannot meet his burden of raising a triable fact that Storopack's purported reason for terminating his employment is pretextual. Farmearl contends that a reasonable jury could draw such an inference because (1) Burke, Whisnant, and Biscardi are white and (2) Farmearl repeatedly complained about racism at Storopack. However, although it is clear that Farmearl perceived himself to be the victim of a racist work environment, it is difficult to ascertain *why* he did so. Farmearl's strongest evidence are the two incidents noted above: (1) that Storopack sent him home while permitting a white employee to continue working and (2) that Biscardi once forced Farmearl, unlike other employees, to continue working. Farmearl Decl. ¶¶ 4, 7. Yet Farmearl fails to link these incidents to racial animus.[14] Farmearl does not

---

[14] At one point, Farmearl argues that Storopack fired him and did not fire Martinez, who also engaged in disruptive behavior. Yet Farmearl later contradicts this assertion. *Compare* Opp. Mot. Summ. J. at 16:9-10 ("Storopack discharged Farmearl without treat[ing w]hite employee Martinez . . . in the same

1  contend that Storopack supervisors directed racial slurs at him or mistreated other African-American
2  employees. In addition, Storopack's stated reason for firing Farmearl is credible. It is undisputed that
3  Storopack issued Farmearl four Corrective Action Notices—one of which was a "final warning"—and that
4  Farmearl's performance review scores fell dramatically before Storopack fired him. Because no
5  reasonable jury could determine that Storopack's claimed reason for firing Farmearl is pretextual,
6  Storopack is entitled to summary judgment on Farmearl's discriminatory termination claim.

### 3. Firing Based on Filing Complaint with the DFEH

#### a. *Prima Facie* Case

To make a *prima facie* showing that he was fired in retaliation for engaging in a protected activity, Farmearl must demonstrate that (1) he engaged in protected activity, (2) he was fired, and (3) there was a causal link between the two. *See Morgan v. Regents of University of California,* 88 Cal. App. 4th 52, 69 (2000). It is undisputed that Storopack was aware of the fact that Farmearl had filed a complaint with the DFEH shortly before it terminated his employment. This suffices to state a *prima facie* claim for retaliatory discharge.

#### b. Storopack's Reason for Firing Farmearl

As noted above, Storopack offers a legitimate reason for terminating Farmearl's employment.

#### c. Evidence that Storopack's Reason is Pretextual

"[T]he timing of adverse employment action can provide strong evidence of retaliation." *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1069 (9th Cir. 2003) (employee raised genuine issue of material fact on retaliation claim by proving that employer fired her nine days after she complained about discrimination); *but cf. Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir.2002) (rejecting employee's claim that timing alone could give rise to inference of retaliation when employer terminated his employment eighteen months after he engaged in protected activity). Here, it is undisputed that Farmearl filed his DFEH complaint on November 19, 2002: less than two months before Storopack fired him. Burke testified that she received notice of Farmearl's complaint about "30 days" after he filed it. Burke Depo. at 196:6-11. Storopack thus terminated Farmearl's employment very shortly after learning

---

fashion") *with id*. at 14:6-9 ("Storopack terminate[d] Martinez, along with Farmearl").

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
C-04-02644 RMW
DOH/KMF                                                        12

1 about the DFEH charges. Moreover, Farmearl asserts that, immediately before Storopack fired him, he
2 spoke with Burke and she "seemed to get upset or angry, and she said . . . that Storopack [w]as not happy
3 with me filing my DFEH charges of discrimination." Farmearl Decl. ¶ 6. Admittedly, at his deposition,
4 Farmearl claimed that Burke said only that Storopack was "kind of disappointed" about the charges.
5 Farmearl Depo. at 301:2-4. Nevertheless, the temporal proximity between Farmearl's complaint and
6 Sotoropack's firing decision in addition to Burke's statement are sufficient to raise a genuine issue of triable
7 fact on whether retaliation was a motivating factor in Storopack's decision to fire Farmearl.[15] The court
8 thus denies Storopack's motion on this issue.

### C.     Wrongful Termination of Employment in Violation of Public Policy

California Labor Code section 2922 states that an employer may terminate an "at-will" employee "with or without good cause." Despite this rule, however, California courts have long recognized that "there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy." *Gantt v. Sentry Insurance*, 1 Cal.4th 1083, 1094 (1992), *overruled on other grounds by Green v. Ralee Engineering Co.*, 19 Cal.4th 66, 80 n. 6 (1998). Employers who discharge employees for reasons that violate "fundamental polic[y]" that is "delineated in a constitutional or statutory provision" therefore face tort liability. *See Sequoia Ins. Co. v. Sup. Court*, 13 Cal. App. 4th 1472, 1480 (1993).

Farmearl alleges that Storopack violated the public policy embodied in numerous sections of the Labor Code and anti-discrimination statutes by firing him because he complained about (1) Storopack's allegedly racist policies and (2) Martinez' drinking at work. Compl. ¶¶ 70-79. The difficulty with Farmearl's first argument is that his means of "complaining" about Storopack's alleged racism was to write inflammatory, anonymous accusations on company documents. No constitutional or statutory provisions protects such conduct. *See Holmes v. General Dynamics Corp.*, 17 Cal. App. 4th 1418, 1434 (1993) (to state claim for wrongful firing in retaliation for whistle-blowing, employee first "must convey the information in a form which would reasonably alert his or her employer of the nature of the problem and the need to take corrective action"). Farmearl also asserts that he complained to Burke about Storopack's

---

[15] Sotoropack's reliance on *Chen v. County of Orange*, 96 Cal. App. 4th 926 (2002) is thus misplaced. *Chen* reasoned that a plaintiff in a retaliation claim must show more than a "[m]ere sequence" of events. *Id*. at 931. Here, because Farmearl also cites Burke's statement, he has shown more than the fact that Storopack fired him shortly after learning about the DFEH complaint.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
C-04-02644 RMW
DOH/KMF                                                         13

alleged racism. However, Farmearl's first conversation with Burke occurred in January 2002: about a year before Storopack fired him. No reasonable jury could conclude that this complaint, standing alone, was a motivating factor in Storopack's decision. Farmearl also claims that he complained to Burke about numerous problems at Storopack in November 2002. However, neither Farmearl nor Burke recall discussing racial issues. *See* Opp. Mot. Summ. J. at 4:8-20; Burke Depo. at 234:11-20. The court thus rejects Farmearl's wrongful firing claim stemming from his complaints about Storopack's alleged racism.

However, Farmearl's wrongful firing claim stemming from his complaints about Martinez drinking on the job is a different matter. California Labor Code section 6310(a)(1) prohibits employers from discharging an employee because he has "[m]ade any oral or written complaint . . . with reference to employee safety or health, his or her employer . . . ." Violation of section 6310(a)(1) can give rise to a claim for wrongful termination in violation of public policy. *See Hentzel v. Singer Co.*, 138 Cal. App. 3d 290, 298 (1982) (employee stated claim for tortious discharge in violation of public policy when he alleged that employer fired him for demanding a smoke-free environment); *Freund v. Nycomed Amersham*, 347 F.3d 752, 759 (9th Cir. 2003) (affirming *Hentzel*'s viability). Farmearl asserts that he complained to Burke about Martinez's drinking on January 9th or 10th of 2003: about five days before the firing. Farmearl Decl. ¶ 6. Because Martinez's job entailed operating machinery, and because alcohol inhibits one's ability to perform such tasks safely, Farmearl's complaint arguably fell within the ambit of section 6310(a)(1). In addition, given the temporal proximity of complaint to the firing, a reasonable jury could conclude that the firing stemmed from the complaint. The court thus denies Storopack's motion in this regard.

### D. Breach of Contract

Farmearl asserts that Storopack breached its employment contract by failing to honor (1) its anti-discrimination and anti-harassment policies and (2) its promise to promote from within the company.[16] The court disagrees. First, it is well-established that a promise to conform to the law lacks consideration and is therefore unenforceable. *See* Cal. Civ. Code § 1605 ("[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, *to which the promisor is not lawfully entitled* . . . is a good

---

[16] Farmearl also asserts that Storopack breached promises to (1) investigate complaints, (2) test employees for drugs and alcohol, and (3) respond to suggestions. However, Farmearl cites no contractual language to support the assertion that Storopack bound itself to do so.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
C-04-02644 RMW
DOH/KMF                                               14

consideration for a promise") (emphasis added). Because the FEHA requires Storopack to refrain from discrimination and harassment, Farmearl cannot predicate a breach of contract claim upon Storopack's alleged failure to do so. Second, the language to which Farmearl's promotion theory refers states that "Storopack believes in promoting from within the company whenever feasible . . . . The company cannot guarantee promotions." Schramm Decl. Supp. Opp. Mot. Summ. J. ("Schramm Decl.") Ex. H. This language does not bind Storopack: indeed, it provides only that Storopack "believes" in insider promotion and expressly disclaims "guarantee[d] promotions." The court thus grants Storopack's motion for summary judgment on Farmearl's breach of contract cause of action.

### E. Intentional Infliction of Emotional Distress

Farmearl asserts that Storopack's conduct caused him to suffer "extreme and severe emotional distress." Compl. ¶ 88. Storopack argues that California Labor Code section 3600(a) makes the worker's compensation system the sole remedy "for any injury sustained by . . . employees arising out of and in the course of the employment." Thus, a plaintiff cannot bring a common law intentional infliction of emotional distress claim for "ordinary employer conduct that intentionally, knowingly or recklessly harms [him]." *Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 714 (1994). Nevertheless, "[t]hat limitation does not apply . . . when the 'injury is a result of conduct, whether in the form of discharge or otherwise, not seen as reasonably coming within the compensation bargain.'" *Kovatch v. California Cas. Management Co.*, 65 Cal. App. 4th 1256, 1277 (1998) (holding that the Worker's Compensation Act does not preempt intentional infliction of emotional distress claims predicated upon wrongful termination in violation of public policy) (quoting *Shoemaker v. Myers*, 52 Cal.3d 1, 19-20 (1990)), *overruled on other grounds by Aguilar v. Atlantic Richfield Co.*, 25 Cal.4th 826 (2001); *Murray v. Oceanside Unified School Dist.*, 79 Cal. App. 4th 1338, 1363 (2000) ("where a plaintiff can allege that she suffered emotional distress because of a pattern of continuing violations that were discriminatory, her cause of action for infliction of emotional distress will not be barred by the exclusivity provisions of workers' compensation laws"). Because Farmearl has valid claims for harassment and retaliatory discharge, his intentional infliction of emotional distress claim survives.

### F. Prayer for Punitive Damages

To recover punitive damages under California law, Farmearl must introduce "clear and convincing evidence" that a Storopack employee acted with "oppression, fraud, or malice." Cal. Civ. Code § 3294. In addition, Farmearl must prove that Storopack "vested the offending employee with substantial discretionary authority over decisions that ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal.4th 563, 576 (1999). Here, because Storopack has not challenged Farmearl's first cause of action for harassment, the record is not sufficiently developed for the court to rule on whether Farmearl can meet his burden. The court thus denies Storopack's motion on this issue.

### G. Farmearl's Request for a Delayed Ruling

Farmearl asserts that he has been unable to obtain responses to its discovery requests because Storopack has filed numerous objections. Farmearl thus requests that the court delay ruling on Storopack's summary judgment motion until the parties resolve this issue. Federal Rule of Civil Procedure 56(f) permits a court to delay ruling on a summary judgment motion when the non-moving party explains that it has insufficient evidence with which to resist the motion:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed R. Civ. P. 56(f). However, the non-moving party "bears the burden of showing 'what facts she hopes to discover to raise a material issue of fact.'" *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991) (quoting *Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302, 1306 n. 1 (9th Cir.1986)). Farmearl fails to explain what he believes that additional discovery will uncover. Thus, the court denies Farmearl's request for a delayed ruling.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
C-04-02644 RMW
DOH/KMF                                     16

## III. ORDER

For the foregoing reasons, the court grants Storopack's motion for partial summary judgment with the exception of Farmearl's (1) retaliatory discharge claim in violation of the FEHA, (2) wrongful termination in violation of public policy claim to the extent that he alleges that Storopack fired him because he complained that Martinez's drinking was a safety concern, (3) intentional infliction of emotional distress claim, and (4) prayer for punitive damages.

DATED: 9/12/05

/s/ Ronald M. Whyte
RONALD M. WHYTE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
C-04-02644 RMW
DOH/KMF                                                        17

1 | **Notice of this document has been electronically sent to:**

2 | **Counsel for Plaintiff(s):**

3 | Richard D. Schramm    rschramm@workplaceattys.com

4 | **Counsel for Defendant(s):**

5 | Thomas P. Brown, IV    tbrown@ebglaw.com
Andrew J. Sommer    asommer@ebglaw.com

7 | Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**      9/12/05                               DOH
                                        **Chambers of Judge Whyte**

---

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
C-04-02644 RMW
DOH/KMF                                18